UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE KINSER,<br>Inmate Booking No. 197926107,<br><br>                               Plaintiff,<br><br>vs.<br><br>DEPUTY V. MARTINEZ, DEPUTY OF THE SAN DIEGO SHERIFF,<br><br>                               Defendant. | Case No.: 3:19-cv-02416 GPC (MSB)<br><br>**ORDER GRANTING DEFENDANT VANESSA MARTINEZ'S MOTION TO DISMISS WITHOUT PREJUDICE**<br><br>[ECF No. 10] |

      Before the Court is Defendant Vanessa Martinez's Motion to Dismiss Plaintiff Michele Kinser's First Amended Complaint. ECF No. 10. The Motion has been fully briefed. ECF Nos. 21, 22. The Court finds this matter suitable for disposition without oral argument pursuant to Civ. L.R. 7.1(d)(1) and accordingly VACATES the hearing

1

currently set for April 2, 2021.  For the reasons that follow, the Court GRANTS Defendant's Motion to Dismiss.

## I.     Procedural History

On December 16, 2019, Michele Kinser ("Plaintiff"), an inmate currently housed at Las Colinas Detention and Reentry Facility ("LCDRF") located in Santee, California, and proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983.  *See* Compl., ECF No. 1.  Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a) when she filed her Complaint; instead, she filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a).  *See* ECF No. 2.

On February 20, 2020, the Court granted Plaintiff's Motion to Proceed IFP and simultaneously dismissed Defendants County of San Diego, William Gore, Sergeant Ward, and Captain Madsen for failing to state a claim upon which relief could be granted.  *See* ECF No. 3 at 10.  However, the Court found that Plaintiff had adequately stated a First Amendment retaliation claim against Defendant Martinez.  *See id.* at 9.

On May 28, 2020, Plaintiff filed a First Amended Complaint ("FAC") against Defendants Madsen, Martinez, and Ward.  *See* ECF No. 6.  Plaintiff's FAC no longer named County of San Diego or Gore as Defendants and thus the Court deemed claims against them as waived.  ECF No. 7 at 3.  The Court then dismissed Plaintiff's claims against Defendants Madsen and Ward, and Plaintiff's Eighth Amendment and conspiracy claims, for failure to state a claim upon which relief could be granted.  *Id.* at 11.  The Court once again found that Plaintiff's retaliation allegations against Defendant Martinez ("Defendant"), which it interpreted as arising under the First Amendment, were sufficient to meet the "low threshold" set for sua sponte screening.  *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012).

On September 9, 2020, Defendant brought the instant Motion to Dismiss.  ECF No. 10.  After several delays due to Plaintiff's changes of address, Plaintiff filed a response in

opposition on March 2, 2021. ECF No. 21. On March 10, 2021, Defendant filed a reply. ECF No. 22.

## II.     Factual Background

As of the filing of her complaint, Plaintiff had been housed at the LCDRF since she was arrested on April 25, 2019. FAC at 9. Plaintiff was sentenced to local custody on July 22, 2019. *Id.* Plaintiff was initially housed in a "lower security dorm." *Id.* Plaintiff claims she has had "no disciplinary write-ups or actions against her during the entire time of her incarceration." *Id.* Plaintiff claims that she did "have one infraction of a non-existent rule" and was "locked down for one night." *Id.*

On November 18, 2019, Plaintiff signed a proof of service for a court filing submitted by her cellmate. *See id.* The filings were returned to Plaintiff's cellmate "with a letter saying she must re-submit the forms in ink." *Id.* at 10. Plaintiff's cellmate "approached Defendant V. Martinez" and asked Defendant if "she could use a pen to fill out court papers." *Id.* Defendant "said no and that she would have to wait for a counselor." *Id.* Defendant also told Plaintiff's cellmate that Plaintiff "was not allowed to sign the [proof of service] because [Plaintiff] was an inmate." *Id.*

On November 29, 2019, Plaintiff's cellmate "asked another Deputy" if she could "use a pen in her presence to fill out the forms." *Id.* Plaintiff's cellmate was permitted to fill out the forms and "she also allowed Plaintiff to execute the [proof of service]." *Id.* That evening, Defendant "came to the unit to do a security check." *Id.* Plaintiff alleges that Defendant refused to allow her cellmate to "use a pen to sign court documents." *Id.* at 12.

Later that day, Plaintiff and Plaintiff's cellmate asked to speak with Defendant's superior, Lieutenant Chapelle, who had come to the unit to do a security check. *Id.* at 10, 12. Plaintiff and her cellmate "explained the situation with Defendant Martinez refusing to allow [Plaintiff's cellmate] to use a pen to sign court documents; how [Plaintiff's

3

cellmate] went to another deputy, and how concerned she was that Martinez would not allow her legal mail to go out via institutional mail procedures in retaliation for [Plaintiff's cellmate] going around her to another deputy." *Id.* at 12. Lieutenant Chappelle "said he would take care of it and went to talk to Martinez." *Id.* After Chapelle left, Plaintiff claims Defendant told her cellmate that she "wanted to know why [they] stopped her [Lieutenant] over something 'so stupid.'" *Id.* Plaintiff alleges Defendant told her cellmate to "be careful of Plaintiff" because she "doesn't know what she's doing." *Id.* Plaintiff further alleges that she later learned Defendant had been "eavesdropping on the entire conversation" between Plaintiff, her cellmate, and Chapelle "through the facility's intercom system." *Id.*

Later that evening, during the "weekly unit inspection," Plaintiff claims Defendant spent "20 – 30 minutes completely ransacking the [Plaintiff's] cell." *Id.* Defendant purportedly "called out only Plaintiff from the multi-purpose room" and told her to "face the wall and spread her feet" so Defendant could "physically search Plaintiff." *Id.* at 12-13. Plaintiff attempted to tell Defendant that she "had an extra blanket due to a physician's note" but Defendant told her to "stop talking" and put Plaintiff back in her cell. *Id.* at 13. Plaintiff alleges that "Martinez had not searched anyone else's cell in the manner in which she [searched] Plaintiff's." *Id.*

Later that evening, Plaintiff alleges Defendant "came into Plaintiff's cell carrying a plastic bag, dropped it on Plaintiff's bed and told her to 'pack your shit up or I will do it for you and write you up for disobeying a direct order.'" *Id.* Plaintiff asked why she was being moved but Defendant "would not respond." *Id.*

As Plaintiff was "leaving the dorm she overheard Martinez telling someone on the phone, 'well they can undo it if they want to but for now, I'm moving her.'" *Id.* Plaintiff was then moved to a "higher security" dorm where she was "no longer allowed contact visits." *Id.* This dorm is also "used to house problem inmates, as well as psych unit

over-flow." *Id.* at 13-14.  Plaintiff claims other inmates in this dorm "scream constantly, bang their heads against the wall, or kick the cell doors all night." *Id.* at 14.

Plaintiff submitted a grievance to Sergeant Ward on November 30, 2019.  *See id.*  In the grievance, Plaintiff claimed Defendant "had set forth no proven facts or evidence in her report to justify moving Plaintiff." *Id.*  Ward responded, "in writing" and "acknowledged" that "Plaintiff had requested preservation of evidence, namely the video surveillance footage." *Id.* at 15.  Ward's response "refers to the incident report documenting Plaintiff's allegedly attempting to conceal her prescription medication." *Id.*  Ward also purportedly verbally told Plaintiff that the "move was not a disciplinary move because Plaintiff did not receive a write-up yet." *Id.*

Plaintiff claims Ward "did not look any further into the matter, although the entire purpose of a grievance is for staff to 'investigate' and revolve issues presented by inmates." *Id*. at 16.  Plaintiff alleges Ward "conducted no investigation." *Id.*

Plaintiff appealed Ward's response to J. Marsden, Facility Captain.  *See id.* at 17.  Marsden "responded to Plaintiff's complaint" on December 12, 2019.  *Id.*  Marsden "stated that he reviewed Plaintiff's in-house history and her criminal history to 'get a better understanding of the situation.'" *Id.*  Plaintiff claims Marsden "merely rubber-stamped Defendant Martinez's decision to move Plaintiff from her housing unit." *Id.*  Marsden found no reason to reverse Defendant's action "based upon the totality of the information, criminal history, in-custody behavior, documentation, and observation of staff." (*Id.* at 18.)

Plaintiff seeks compensatory damages, "disciplinary action taken against all named Defendants," and injunctive relief.  (*Id.* at 31.)

### III.  Legal Standard

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Dismissal

5

under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

**IV. Discussion**

Defendant asserts that Plaintiff's only remaining claim, a claim for retaliation under the First Amendment, fails because Plaintiff has neither alleged that she engaged in protected conduct nor alleged a chilling effect as a result of Defendant's actions. ECF No. 10. Plaintiff opposes and contends that she does not intend to bring a claim under the First Amendment. ECF No. 22.

A. <u>Eight Amendment Claim</u>

Plaintiff states that her retaliation claim arises under the Eighth Amendment and that she did not intend to plead a First Amendment claim. ECF No. 21 at 2. However, this Court previously dismissed Plaintiff's Eighth Amendment claims, as it found that Plaintiff had failed to allege a deprivation of basic human needs or wanton infliction of pain without penological justification and had not alleged physical injury. *See* ECF No. 7. The Court stands by this determination.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The Eighth Amendment requires officials to "provide humane conditions of confinement" by ensuring "that inmates receive adequate food, clothing, shelter, and medical care." *Id.*  However, a housing assignment that is merely "restrictive and even harsh," but does not "inflict[] unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting imprisonment," is not an Eighth Amendment violation.  *Rhodes v. Chapman*, 452 U.S. 337, 347–48 (1981).  Not all adverse actions, even those that are unfairly retaliatory, meet the definition of "cruel and unusual punishment" under the Eighth Amendment.  *See Gray v. Hernandez*, 651 F. Supp. 2d 1167, 1175–76 (S.D. Cal. 2009) (finding that Plaintiff's allegations regarding his placement in administrative segregation were sufficient to state a First Amendment retaliation claim, but not to state an Eighth Amendment claim).

Plaintiff's FAC states that she was placed in a "higher security" dorm and was denied contact visits.  FAC at 6.  She describes the unit as one "used to house problem inmates as well as psyche unit overflow" and states that "[o]ften such inmates scream constantly, bang their heads against the walls or kick the cell doors all night," and "[s]ome have even been known to throw urine against their doors or defecate on themselves in the shower." *Id.*  But as the Court found previously, Plaintiff did not adequately allege that these conditions rise to the level of denying Plaintiff a minimal civilized measure of life's necessities.  ECF No. 7 at 8–10; *see also Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002) ("[I]t is well-settled that prisoners have no constitutional right while incarcerated to contact visits.").  While extreme levels of excessive noise or unsanitary conditions may in some circumstances suffice to state an Eighth Amendment claim, *e.g.*, *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996); *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995), Plaintiff's limited

factual allegations regarding her placement in a higher security dorm fell short of plausibly alleging an extreme deprivation or harm sufficient to support an Eighth Amendment violation. *Cf. Sterling v. Smith*, No. CV606-103, 2007 WL 781274, at *4 (S.D. Ga. Mar. 8, 2007) (finding plaintiff's Eighth Amendment claims predicated on "typical" prison noise and other inmates' unsanitary cells insufficient to survive a motion to dismiss).

Plaintiff also did not allege facts regarding Defendant's deliberate indifference. A prison official acts with deliberate indifference if she "knows of and disregards an excessive risk to the prisoner's health and safety." *Farmer*, 511 U.S. at 837. Plaintiff did not allege that Defendant was aware of the specific conditions of confinement of which Plaintiff complains when Defendant decided to place Plaintiff in the higher security unit.

The Court had interpreted the retaliation allegations in Plaintiff's complaint as relating to a First Amendment violation, given that the FAC alleged that Defendant retaliated against Plaintiff for speaking with Lieutenant Chappelle. ECF No. 7 at 10–11. To the extent Plaintiff disclaims any intent to bring a First Amendment claim, the Court finds the FAC must be dismissed.

B. Leave to Amend

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber*, 806 F.2d at 1401). "A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)). Because the deficiencies in the complaint could potentially be cured by amendment, the

Court will GRANT Plaintiff leave to file a Second Amended Complaint against Defendant Martinez, if she wishes.

## V. Conclusion

For the reasons explained, the Court:

1. **VACATES** the hearing on this matter currently set for April 2, 2021; and
2. **GRANTS** Defendant Vanessa Martinez's Motion to Dismiss without prejudice.

If Plaintiff wishes to file a Second Amended Complaint, she must do so within **45 days** of the date of this order. The Clerk of Court is directed to mail a court-approved civil rights complaint form to Plaintiff.

**IT IS SO ORDERED**.

Dated: March 25, 2021

Hon. Gonzalo P. Curiel
United States District Judge